PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JACINTO TORRES, Defendant and Appellant.

No. 6653. Argued December 10, 1937.—Decided January 18, 1938.

*Alfonso Lastra Chárriez* and *J. Ramírez Viñas* for appellant. *R. A. Gómez, Prosecuting Attorney,* and *Luis Janer, Assistant Prosecuting Attorney,* for appellee.

MR. JUSTICE TRAVIESO delivered the opinion of the Court.

Jacinto Torres, accused of murder, was convicted of manslaughter and sentenced by the District Court of Arecibo to three years and six months imprisonment. The present appeal was taken against such a judgment.

At the hearing the defendant admitted having killed Ramón Rosa Sicardó, and based his defense upon the allegation that he had done so at the moment that the deceased was committing a robbery (felony) within the store owned by the defendant.

The first assignment of error sets up that the verdict is against the law and the evidence introduced at the trial. Let us examine the evidence of the People.

Witness Cándido de Cacho, Municipal Judge of Manatí, testified that he was informed that something had happened at a store belonging to Carrión, where the defendant was employed; that when he entered the establishment he found the corpse of Ramón Rosa in front of some show-windows; that the police brought the defendant there; that the latter stated that he had killed him because he had caught him stealing very near to, and behind the cash register; that the defendant told him that he had seen Rosa come in through the lattice-work behind the store and that he did nothing but when Rosa went to the cash register and commenced to manipulate it, then he pulled out his revolver, fired a shot and grappled with the deceased and they rolled outside where Rosa fell dead; that the corpse was barefooted and that he noticed that his feet were clean.

Angel Guillermo Rosa testified that he was a brother of the deceased; that on the day of the events at about 2:30, the witness and the deceased went towards the store of the defendant to buy a pair of socks; that upon their arrival at the store they asked the defendant whether he would sell them a pair of socks and he answered in the negative; that then they crossed the road and stopped to talk to a young fellow; that at that moment the defendant came out and called them; that the deceased left and he followed him; that the defendant did not allow the witness to come in, telling him that he had to say something to Ramón (the deceased); that his brother went into the store and he waited for him at the door and began to wash his hands; that the defendant closed the door after his brother went in; that while he was washing his hands he heard a shot, ran to the show-window, looked and saw nothing and at that very moment the defendant came out crying: "Police, arrest him, I have killed him"; that when his brother went into the store he had his shoes on; that when he heard the defendant say that he had killed him, he went to his home and

did not see his brother's corpse at the store; that from the moment that his brother entered the store until the shot was heard about one minute elapsed and that from the moment of the shot until the defendant opened the door two minutes went by.

Pelegrín Busquets, Police Corporal, testified that when he arrived at the spot he found policeman Valedón, the defendant and the deceased; that the defendant said to him that he had killed the deceased because he had found him stealing, but that he did not say what he was stealing.

Enrique Valedón, policeman, testified that at about 3:00 o'clock in the afternoon he heard a shot and went to the store of the defendant, knocked two or three times and the door was opened; that when he asked the defendant what had happened the latter told him: "I have just killed a man because he has been stealing from us for some time" and that before that they had noticed some stealing going on at the store; that the defendant and his partners had reported to the police several instances of stealing at the store; that on the day in question he was on duty at the street in front of the store of the defendant; that he did not see the store open at any time nor did he see anybody come in through the front, inasmuch as it was a Sunday and the store was closed.

Witnesses for the People, Manuel Morán, Fidel Benero and Vicente García corroborated the foregoing testimony.

Andrés Agosto testified that on the day in question when he was going home towards the town he saw the deceased in front of him accompanied by his brother; that he knew both of them by sight; that when they arrived at the outskirts of the town the brothers went on and he stopped; that it was about a quarter to three in the afternoon; that they went on along the main street, where the store of the defendant is located; that the deceased Ramón Rosa was dressed with soiled clothes and had on some old black shoes.

Guadalupe Moll, testified that when he was returning from the Central to the town, at about 3:00 P.M., he saw the defendant and the deceased talking at the entrance of the defendant's shop; that the defendant was standing above and the deceased below and that the brother of the latter was standing near a gasoline stand; that he, the witness, went on to a drug store; that he heard an uproar on the corner and when he returned the boy was dead; that he heard the shot about five minutes after he had gone by; that he heard no shots but a lot of yelling; that he returned when he heard that someone had been killed and when he arrived he saw the young fellow dead; that he did not hear the conversation between the deceased and the defendant; that the deceased had no coat or hat on and was wearing a pair of black shoes.

To support his theory that Ramón Rosa was killed while he was attempting to commit larceny within the establishment of the defendant, the latter introduced several witnesses who testified as follows:

Dionisio García Torres testified that for an hour and a half before the incident he was at a café belonging to Antonio Torres located in front of the defendant's store; that he did not see Ramón Rosa, but that he did see him before that dressed in white at a place known as "El Troly"; that at no time did he see Ramón Rosa in front of the defendant's store; that later when he heard a shot at Carrión's store he ran towards the shop thinking that a suicide had taken place, inasmuch as the house was closed and solitary; that about two minutes after he arrived there the defendant opened the door and said "I have killed someone", and at that very moment policeman Valedón arrived; that he saw the deceased from outside and he was barefooted and wearing dirty clothes, in a condition different from that which he had seen him at one o'clock in the afternoon.

Pelegrín Busquets, Police Corporal, testified that after the corpse was taken away he made an investigation; that

at the rear end of the establishment he found a ladder mounted upon a wooden box and rested against Carrión's establishment; that the ladder reached up as far as some wood frames placed on the upper part to protect the store; that witness Benero climbed the ladder to shake some of the boards and pulled one out with his hands and another fell out; that when he first saw the framework they seemed well placed; that they seemed to be nailed down; that when Benero manipulated them one of them became easily unnailed, without his having to pull very hard; that that piece was about two feet long; that from the framework to the show-window within the store there is a distance of about five and one half to six feet; that after the board was removed there remained an opening from nine or ten inches wide to two feet long.

Esteban Carrión testified that he was one of the partners of Carrión's store; that robberies took place often at the store for which reason he had to complain to the police, but that they were never able to catch the robber; that in view of this they decided to employ a watchman; that on the night before the incident in question Cruz Carrión and Juan Grauló kept a watch until six o'clock on Sunday morning; that he was on watch on Sunday from six o'clock until 10:30 when he was substituted by Grauló until twelve when Jacinto Torres, the defendant, would come for lunch and keep watch. He continued to testify in corroboration of what had already been said with regard to the framework at the back and gave details as to the several robberies which had taken place at the shop.

We believe that it is unnecessary to sum up the testimony of the other witnesses inasmuch as they are mere repetitions or corroborations of the former.

The evidence considered as a whole presents a conflict between two theories. The evidence of the defense tends to support the theory that the deceased entered the shop of the defendant, at three o'clock in the afternoon, with the pur-

pose of committing therein the crime of robbery; and that the defendant who was there on watch, fired a shot which killed him. The evidence of the prosecuting attorney tends to show that the defendant invited the deceased to come into the store, shut himself in with the latter and killed him. The jury decided the conflict by finding the defendant guilty of manslaughter, that is, of having killed another human being without malice. Assuming therefore that the jury found and believed that the death of Ramón Rosa happened in the form and manner set forth by the defendant himself, was the jury justified in finding him guilty of manslaughter? We believe that it was.

Our Penal Code contains the following provisions:

"Section 209.—Homicide is also justifiable when committed by any person in any of the following cases:

"1. When resisting any attempt to murder any person, or to commit a felony, or to do some great bodily injury upon any person; or,

"2. When committed in defense of habitation, property, or person, against one who manifestly intends or endeavors, by violence or surprise, to commit a felony, or against one who manifestly intends and endeavors, in a violent, riotous or tumultuous manner, to enter the habitation of another for the purpose of offering violence to any person therein; or,

"3. When committed in the lawful defense of such person, or of a wife, or husband, parent, child, master, mistress, or servant of such person, when there is reasonable ground to apprehend a design to commit a felony, or to do some great bodily injury, and imminent danger of such design being accomplished; but such person, or the person in whose behalf the defense was made, if he was the assailant or engaged in mortal combat, must really and in good faith have endeavored to decline any further struggle before the homicide was committed; or,

"4. When necessarily committed in attempting by lawful ways and means to apprehend any person for any felony committed or in lawfully suppressing any riot, or in lawfully keeping and preserving the peace.

"Section 210.—A bare fear of the commission of any (of) the offenses mentioned in subdivisions two and three of the preceding

section, to prevent which homicide may be lawfully committed, is not sufficient to justify it. But the circumstances must be sufficient to excite the fears of a reasonable person, and the party killing must have acted under the influence of such fears alone.''

According to the statements made by the defendant himself immediately after the incident, he saw the deceased come in at the back of the store through the opening in the framework; he allowed him to enter as far as the cash register and when the deceased began to manipulate the cash register, the defendant fired the shot which killed him. Accepting the facts stated by the defendant as true, they are not sufficient to justify the manslaughter of which he was convicted. When he entered the store, at three o'clock in the afternoon with the purpose of stealing money or merchandise, the deceased was committing burglary in the second degree, punishable by imprisonment for a maximum term of two years and designated as a misdemeanor. See: Sections 14, 408 to 410 of the Penal Code, 1937 edition. There is no evidence that the deceased attempted to inflict serious bodily harm upon the defendant, before the latter fired the shot. See *People* v. *Díaz*, 16 P.R.R. 67. The struggle between the defendant and the deceased happened, according to the testimony of the defendant himself, after the latter fired the shot. The deceased struggled in order to defend his life after he had suffered a fatal wound.

We are of the opinion that the verdict rendered by the jury is according to law and is fully supported by the evidence. Inasmuch as it has not been shown that the jury acted with bias, prejudice or partiality, it is our duty to respect that verdict. *People* v. *Díaz*, *supra*.

■ The second assignment refers to the refusal of the lower court to give the jury certain instructions requested by the defense.

1. The first instruction denied reads as follows:

''Section 238 of the Penal Code of Puerto Rico defines the crime of robbery as follows:

" 'Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence and against his will, accompanied by means of force or fear.'

"Robbery is a felony and the attempt to commit robbery is also a felony."

The lower court did not err in refusing to give the above instruction. The evidence did not show that at the moment that the deceased received the fatal wound he was committing or attempting to commit a robbery, as defined by Section 238 of the Penal Code. There was no evidence to show that the deceased was attempting by means of force or fear to appropriate property belonging to the defendant. The instruction refused would have confused the jury. A defendant has no right to instructions as to questions which have not been the subject of the evidence. Furthermore, the instructions given by the lower court covered the subject matter completely, distinguishing between robbery, larceny and burglary.

■■ 2. The second instruction denied read:

"According to Section 208 of the Penal Code of Puerto Rico, a homicide, that is, the killing of another, whether it is classified by the prosecuting attorney as murder or as manslaughter, is justifiable when it is committed by a private person in resisting any attempt to kill another person or to commit a felony, or when it is committed in defense of the home, the property or the person of the defendant."

There was no error in the court's denial. The instruction requested is against the law and clearly erroneous. In the first place Section 208 therein cited (*supra*) is not applicable. Section 209, *supra,* is the one which defines the occasions on which a person is justified in killing another. Neither that section, nor any other legal provision, justifies the killing of another in defense of property, unless there is an attempt to deprive one of said property by force or fear. The defendant in this case had no right to kill Ramón Rosa for the mere fact that the latter should be

attempting to open a cash register. No evidence was introduced to show that Rosa used force or fear in attempting to commit his larceny.

■ 3. The third instruction requested by the defense and denied by the lower court said:

"According to Section 211 of the Penal Code of Puerto Rico, if, in a proceeding against the defendant for the illegal killing of another, it appears that the defendant committed that killing under circumstances which, in his opinion, were justifiable, the defendant should be acquitted and completely exonerated."

We are of the opinion that the lower court did not err in refusing to give this instruction. It is true that the instruction conforms to the language of Section 211 of the Penal Code, but it is incomplete and confusing inasmuch as no recital of the circumstances under which a person is justified in killing another is stated therein. Without this statement the jury would not be in a condition to determine whether the death of Rosa occurred under circumstances recognized by law as sufficient to justify the killing. We have carefully studied the instructions given by the trial court and we find that they fully and correctly cover the question that the defendant attempted to cover by means of the instruction refused. The defendant was in no way prejudiced by the denial.

■ 4. The lower court refused to give the following instruction:

"A person has the legal right to defend his property from any other person who attempts to appropriate it criminally, and also has the right to prevent the commission of a felony, exercising the necessary force, even to the extreme of assaulting the person who should attempt to appropriate his property violently or by surprise, or who should attempt to commit a felony."

Even though the foregoing instruction conforms to law, nevertheless, if it is considered by itself and without taking into account the facts of the case, it might have confused the

jury. If there was any error in the refusal of the lower court, we believe that this error could not prejudice the substantial rights of the defendant in any manner, inasmuch as the general instructions given by the trial judge fully and correctly covered the same field.

5. We do not believe that there was any error in the denial of the following instruction:

"If after an analysis of the evidence for the People and for the defense the jury should arrive at the conclusion that the deceased Ramón Rosa, penetrated the establishment of the defendant by surprise, for the purpose of committing a robbery in the immediate presence of the defendant, with force and fear, attempting to appropriate property of the defendant, and in order to avoid the appropriation of that property by the deceased, or to prevent the latter from committing a robbery, the defendant fired, then it is the duty of the jury to acquit him."

The defendant's theory nor the evidence introduced by him warranted the giving of such an instruction. There was no evidence that the deceased entered the store by surprise. If there was any surprise in the case at hand it was that which the deceased must have experienced when he was interrupted in the manipulation of the cash register by the shot which unexpectedly was fired at him by the defendant. Likewise there was no evidence that the deceased should have exercised force or fear in the appropriation of any property. The statement of the facts which the defendant himself made immediately after the incident shows that the defendant was not surprised, inasmuch as he was there, in ambush, armed and ready to kill any one who should come in to commit a felony. There was no evidence that the deceased carried a weapon.

6. The sixth instruction denied referred to reasonable doubt and read as follows:

"If the gentlemen of the jury have a reasonable doubt as to whether the facts occurred in the manner shown by the evidence of the People or whether they occurred in the manner shown by the

evidence for the defense, that is, if after a fair and impartial (sic) and after weighing the evidence offered in the case, you gentlemen of the jury find yourselves in such a state of mind that you may actually say, without a reasonable doubt, that the deceased went into the store in the manner alleged by the defendant, but you can not really say without a doubt that the deceased entered in the manner alleged by the People of Puerto Rico, then it is your duty to give the benefit of the doubt to the defendant and acquit him.''

The lower court did not err in refusing to give this instruction. In addition to the fact that it is confusing and not easily understandable, it would have practically amounted to an order for a directed verdict of acquittal. The jury could have no doubt but that the facts occurred in the manner stated by the defendant. The verdict of manslaughter clearly shows that they believed and accepted the theory of the defense, but believed that the circumstances under which the defendant killed Ramón Rosa were not legally sufficient to justify the homicide. The fundamental issue in the case was not contradicted. That the defendant killed Rosa was a fact admitted by the defendant himself. The only question to decide was whether this killing was justifiable. The jury decided it, in our opinion, correctly and in the most favorable manner for the defendant, inasmuch as we are of the opinion that the facts recited were sufficient to support a more severe verdict. The only possible doubt was whether the defendant had committed a murder, as the prosecuting attorney alleged, or whether he had committed a manslaughter, according to the facts admitted by the defense. It is evident that the jury gave the defendant the benefit of that doubt when it found him guilty of manslaughter.

In the last assignment the lower court is charged with having committed error in submitting the following instruction to the jury:

''If the gentlemen of the jury have a reasonable doubt as to whether this defendant was the one who committed the crime, or was the one who killed the deceased, or if the gentlemen of the jury

have a reasonable doubt as to whether or not the guilt of the defendant has been proved, then you should acquit him.

"A reasonable doubt is that state of mind where there is no moral certainty as to whether or not a crime has been committed."

The appellant has not convinced us that this error has been committed. It was up to the jury to decide whether the defendant killed the deceased, even though the evidence should have clearly shown the facts. There was no error in telling the jury that if it should have a reasonable doubt upon this question it should acquit the defendant. Likewise there was no error in telling the jury that it should acquit the defendant if it should have a reasonable doubt as to whether his guilt had been proved.

We have carefully read the instructions given by the trial judge to the jury and we find nothing therein which might be considered prejudicial error to the rights of the defendant. Once the defendant admitted that he killed the deceased, his acquittal could only be based upon the justification of the homicide. The jury found that the killing of Rosa was not justified, and we are of the opinion that the verdict was correct.

The judgment appealed from should be affirmed.

Mr. Justice Córdova Dávila took no part in the decision of this case.